[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 4, 2004
THOMAS K. KAHN
CLERK

_____

No. 02-16921

_____

D. C. Docket No. 99-02299-CV-KMM

HELENIO PRIETO, in his capacity as
personal representative of the
estate of Florentino Prieto,

Plaintiff-Appellant,

versus

MANUEL MALGOR, individually,
LUKE MAROKIOLI, individually,
MIAMI-DADE COUNTY, a political
subdivision of the State of
Florida,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 4, 2004)

Before DUBINA, BARKETT and COX, Circuit Judges.

PER CURIAM:

Helenio Prieto filed this appeal following an adverse jury verdict in a suit against two police officers and the County of Miami-Dade for excessive force and battery. Prieto claims that the district court improperly allowed expert testimony on the appropriate use of force despite the failure of Defendants to provide the expert witness report required under Federal Rule of Civil Procedure 26(a)(2). Prieto also claims that the district court improperly entered a direct verdict in favor of the officers in their individual capacity on his state battery claim. Because we find that Plaintiff's counsel effectively waived objection to the failure to provide the required expert witness report, and find no error otherwise, we affirm.

*I. Background*

Florentino Prieto[1] filed suit over his treatment by officers Manuel Malgor and Luke Marckioli after his 1997 arrest for driving with a suspended license. Prieto claimed that the officers threatened to plant drug evidence in his car, repeatedly threatened to harm him, and physically abused him upon arrival at the station. In the station processing room, Prieto was ordered to take off his belt, at

---

[1]Florentino Prieto died in 2001. His brother Helenio now represents Florentino's estate.

which point an altercation ensued. Under Prieto's version of events, the officers pinned him to the wall and punched him in the face without provocation. The punch left his vision permanently impaired and caused significant psychiatric problems. Under the officers' version of events, Prieto swung his belt violently toward Marckioli's head, causing him to duck in order to avoid being struck. Marckioli then attempted to restrain Prieto in a bear hug, but Prieto punched him in the stomach. Malgor responded by twice punching Prieto in the face, just above his eye.

Prieto filed a complaint in state court alleging (1) excessive force under 28 U.S.C. § 1983 against the two officers; (2) battery under Florida law against the two officers in their individual capacity, which required a showing of bad faith or malice; and (3) battery under Florida law against Miami-Dade County. Defendants removed the action to federal district court, which granted summary judgment to the officers on the federal claim on the basis of qualified immunity.[2] On appeal, we reversed with respect to Malgor, holding that the acts alleged by Prieto constituted excessive force and, thus, that the disputed versions of the facts had to be resolved at trial.

At the jury trial on remand, Plaintiff presented recorded testimony from

---

[2]The district court also granted summary judgment on a § 1983 failure-to-train claim that Prieto later added against the County.

Prieto about the arrest and alleged battery, evidence from Prieto's family and original lawyer about his condition after the incident, and an extended cross-examination of the two officers involved. At the close of Plaintiff's case, the court directed a verdict in favor of the individual officers on the state battery claim, finding as a matter of law that they had acted within the scope of their employment and that there was insufficient evidence to find they had acted maliciously. The court, however, allowed the battery claim against the County to go forward,[3] as well as the excessive force claim against Malgor.

The defense presented testimony by medical and psychological experts and other Miami-Dade officers who had been involved shortly before or after the incident. The defense then called Ivan Rodriguez, who regularly trained Miami-Dade officers on the use of force, and proffered him as an expert on police procedures and the use of force. Plaintiff immediately objected, arguing that Defendants had failed to provide the expert witness report required by Local Rule 16.1(K) and Federal Rule 26(a)(2)(B).[4] Defendants conceded they had failed to

---

[3]In the absence of bad faith or malicious purpose, Florida law provides an exclusive remedy against the relevant governmental entity for any injury caused by an officer acting in the course of his employment. Fla. Code § 768.28(9)(a). Thus, the jury still needed to determine whether Malgor and Marckioli committed battery in the course of their employment in order to determine whether the County was liable for Prieto's injuries.

[4]Local Rule 16.1(K) provides:

Where expert opinion evidence is to be offered at trial, summaries of the expert's

4

provide the report but countered that, as an employee, Rodriguez was exempt from the requirements imposed upon specially hired experts. The judge examined the witness list submitted before trial, which indicated that Rodriguez would testify as to the use of force,[5] and permitted the testimony. Rodriguez testified that Prieto's

anticipated testimony or written expert reports (including lists of the expert's qualifications to be offered at trial, publications and writings, style of case and name of court and judge in cases in which the expert has previously testified and the subject of that expert testimony, the substance of the facts and all opinions to which the expert is expected to testify, and a summary of the grounds for each opinion) shall be exchanged by the parties no later than 90 days prior to the pretrial conference . . . .

S.D. Fla. Local Rule 16.1K. "This rule is based in part on the disclosure requirements of Federal Rule 26(a)(2), . . . and in part on superseded Federal Rule 26(b)(4) concerning expert interrogatories." Id. cmt. Under the rule, "the expert witness information to be disclosed may be either a summary prepared by counsel or a report prepared by the expert (both of which are required to provide the information specified)." Id.

Federal Rule of Civil Procedure 26 provides in relevant part:

Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Fed R. Civ. Proc. 26(a)(2)(B).

[5]The amended witness list included the following entry: "Lt. Ivan Rodriguez, Miami-Dade Police Dept., Court Liaison Office, . . . (expert) - who may testify as to the necessity, reasonableness and policies concerning the use of force and the arrest in this case." (R. at 12-2.)

use of his belt would be considered a "deadly force attack" and that the officers were justified in their use of force specifically in response to the use of the belt.

After two days of deliberation, the jury issued a verdict specifically finding that Prieto had posed an immediate threat to the officers when he removed his belt, that Malgor did not use excessive force against Prieto, and that neither Malgor nor Marckioli had committed battery within the meaning of Florida law. This appeal followed.

*II. Discussion*

*A. Rule 26 Expert Witness Report*s

Prieto first attacks the district court refusal to exclude Rodriguez' expert testimony, a decision we review for abuse of discretion. <u>Griffith v. Gen. Motors Corp.</u>, 303 F.2d 1276, 1282 (11th Cir. 2002). Rule 26 imposes specific disclosure requirements upon any witness "who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony." Fed. R. Civ. Proc. 26(a)(2)(B). Notice of the expert witness' name is not enough. Each witness must provide a written report containing "a complete statement of all opinions to be expressed and the basis and reasons therefor," as well as information about the data considered, the witness'

6

qualifications, the compensation earned, and any other recent cases in which he or she offered testimony. Id. Any party that "without substantial justification" fails to disclose this information is not permitted to use the witness as evidence at trial "unless such failure is harmless." Fed. R. Civ. Proc. 37(c)(1). The district court may impose other appropriate sanctions in addition to or in lieu of the evidentiary exclusion. Id.

In this case, both parties agree that Rodriguez did not make the expert witness disclosures required by Rule 26(a)(2)(B), even though Defendants explicitly proffered him as "an expert in use of force and police procedures." Defendants argue that Rodriguez is exempt from the rule on the dual grounds that he is a "hybrid" witness called upon to testify to both factual and expert matters and that he is an employee and therefore exempt from the rule. They alternatively contend that, ultimately, Plaintiff waived any objection to the testimony.

We begin by noting that if Rodriguez' normal duties as an employee involve giving expert testimony, he was obliged to provide the detailed expert witness report required by Rule 26.[6] We also agree with the Southern District of New

---

[6]Although Defendants contend that Rodriguez' duties "do not involve regularly testifying," Appellee Br. at 19, they also admit that Rodriguez normally "render[s] opinions on the propriety of police officers' action." Id. at 18. Rodriguez himself stated that he has "testified and been qualified in federal and state courts as an expert in use of force and police procedures." R. at 148-43. We also note that Defendants listed Rodriguez as affiliated with the Miami-Dade Police Department "Court Liaison Office." R. at 12.

7

York that allowing a blanket exception for all employee expert testimony would "create a category of expert trial witness for whom no written disclosure is required" and should not be permitted. Day v. Consolidated Rail Corp., 1996 WL 257654 (S.D.N.Y. 1996) at *2. The Day court stressed the Rule's "evident purpose of prompting full pre-trial disclosure of expert information" and noted that recent Rule amendments consistently broadened the scope of disclosure. Id. The court recognized that the Rule excluded at least some employees but construed that exception as limited to "experts who are testifying as fact witnesses, although they may also express some expert opinions." Id.[7] The court found no justification for excusing any experts "called solely or principally to offer expert testimony," whether or not they were employees. Id. at *3. See also KW Plastics v. U.S. Can Co., 199 F.R.D. 687, 689 (M.D. Ala. 2000) (quoting Day extensively); Minn. Mining & Manuf. Corp., 177 F.R.D. 459, 460 (D. Minn. 1998) (same).

We agree with the reasoning of the Day court as applied to this case. Rodriguez had no connection to the specific events underlying this case apart from his preparation for this trial. He merely reviewed police reports and depositions provided by counsel and offered expert opinions on the level of force exhibited by Prieto and the appropriateness of the officers' response. He categorized these

_____

[7]As discussed below, after reviewing the record in this case, we do not find Rodriguez to have been a hybrid witness.

events by referring to the "use of force matrix," a visual chart used to train officers on the level of force appropriate to a particular act of resistance. He testified that Prieto's use of a belt would be "considered aggravated physical, which is the highest level of resistance an individual can give." R. at 148-53. He then concluded that the officers could "go to a deadly force response, according to this matrix." Id. In other words, he functioned exactly as an expert witness normally does, providing a technical evaluation of evidence he had reviewed in preparation for trial. Because he had no direct, personal knowledge of any of these facts, his role was simply not analogous to that of a treating physician, the example offered by the Advisory Committee of an employee exempt from the written report requirement. Fed. R. Civ. Proc. 26 advisory committee's note.

Having determined that the County was obliged to provide the expert witness report, we turn to the County's argument that nonetheless Prieto cannot prevail because the issue was waived during trial. After Plaintiff's counsel objected to Rodriguez's testimony, this exchange followed:[8]

THE COURT: I will let it in, but I will note your objection.

MR. PETIT: That without the expert compliance?

THE COURT: Well, I'm not saying he hasn't complied.

---

[8]Mr. Petit represents Prieto, while Mr. Gressman represents the officers and the County.

MR. PETIT:  I'm alleging that he hasn't pursuant to 16.1K and Mr.
        Gressman is asserting he hasn't filed an affidavit.

MR. GRESSMAN:  I can provide that now.

MR. PETIT:  In that case and CV compliance, then we have no problem.

THE COURT:  Okay.

MR. PETIT:  Could we ask for a two-minute break to look at that CV?

MR. GRESSMAN:  Sure.  I have no problem.

THE COURT:  How long will it take for you to get it to him?

MR. PETIT:  Your Honor, I have it.

THE COURT:  Okay.

R. at 148-46 to 148-47.

In the colloquy, Plaintiff's lawyer, Mr. Petit, can reasonably be understood to have withdrawn the objection he had raised.  After defense counsel said he could immediately provide the requisite report,[9] Petit replied: "In that case and CV compliance,[10] then we have no problem."  Plaintiff neither renewed his objection

---

[9]Although Mr. Petit mentioned an "affidavit" immediately preceding Mr. Gressman's statement that "I can provide that now," the record strongly suggests that Mr. Gressman provided Mr. Petit with the required expert witness summary. First, Mr. Gressman had stated moments earlier that he had "a summary from him [Rodriguez] and this is what he was going to say." Second, Mr. Petit used the word "affidavit" in the context of describing why Rodriguez had failed to comply with Local Rule 16.1K, which requires a summary of the anticipated testimony. In any case, Mr. Petit examined the documents and withdrew his objection.

[10]"CV" was obviously a reference to Rodriguez's curriculum vitae.

nor offered any new objection to the expert nature of Rodriguez's testimony.

Based on Mr. Petit's assertion that "we have no problem" with Rodriguez testifying if Defendants provided the summary and the CV, and the fact that Defendants provided those documents, the court could have reasonably concluded that Petit had withdrawn his objection. Under these facts, it cannot be said that the district court abused its discretion in allowing Rodriguez to testify.

*III. Directed verdict*

Prieto also challenges the district court entry of a directed verdict in favor of the individual officers on the state battery claim. Under Florida law, an officer may not be held personally liable for any injury resulting from an act committed in the scope of his or her employment unless the officer acted with bad faith or with malicious purpose. Fla Code § 768.28(9)(a). After resting his case at trial, Plaintiff conceded that the officers had been acting within the scope of their employment but argued that the jury could still find that they had acted with bad faith or malicious purpose. R. at 147-180 to 147-181. However, the court found as a matter of law that the officers had not acted with malice and directed a verdict in favor of the officers on the state claim. R. at 148-13.

Prieto relies primarily on <u>McGhee v. Volusia County</u>, 679 So. 2d 729 (Fla.

11

1996), in which an arresting officer allegedly grabbed a handcuffed suspect by the throat and repeatedly kicked him. The Florida Supreme Court held that the officer had been acting within the scope of his employment but that, in order to determine whether the county was liable, "the question must be put to the fact-finder whether Deputy Hernlen acted in bad faith, with malicious purpose, or in a manner exhibiting wanton or wilful disregard of human rights, safety, or property." Id. at 733. Prieto argues that this passage should have compelled the district court to submit the question of bad faith to the jury.

We do not agree with this reading of McGhee. Immediately after the quoted passage, the court explicitly disavowed the proposition that the question of bad faith must always be submitted to the fact-finder: "We emphasize, however, that this holding is based on the questions presented by the facts at hand. There may be cases in which summary dismissal would be proper based on different facts." Id. at 733 n.7. Unlike the situation in McGhee, where the arrestee was handcuffed, the officers in the present case allege that Prieto posed an immediate threat and was swinging at them with his belt. Thus, McGhee did not foreclose the district court from directing a verdict in favor of the officers.

More importantly, even if the district court should have let the question go to the jury, any error was plainly harmless. In order to determine whether the County

was liable for Prieto's injuries, the jury needed to determine whether Officers Malgor and Marckioli committed battery in the course of their employment. Fla. Code § 768.28(9)(a). The court instructed the jury that battery meant "the officers used force which exceeded that which was reasonably necessary under the circumstances to carry out his or their duties." R. at 137-10. The jury found that neither officer had "batter[ed] Mr. Prieto within the meaning of Florida law." R. at 138-2. Because the jury found that neither officer had battered Prieto, they could not have found that either officer had battered Prieto with bad faith or malice. Plaintiff suffered no prejudice from the inability of the jury to make the additional determination.

**AFFIRMED**.

COX, Circuit Judge, specially concurring:

I concur in the result, and I join that part of the court's opinion which concludes that Prieto waived any objection based on the Defendants' failure to disclose expert witness information about Rodriguez. I do not join that part of the opinion that discusses Fed. R. Civ. P. 26(a)(2)(B) and Fed. R. Civ. P. 37(c)(1) for two reasons. First, no objection was made in the district court based upon these rules; the only objection ever asserted in the district court was explicitly grounded upon the Southern District's Local Rule 16.1K, which is different from the federal rules.[1] Second, having decided that any objection was waived, the discussion of Rule 26 and Rule 37 is pure dicta.

On the directed verdict issue, I think there was error in directing a verdict, but I agree that it was harmless.

---

[1] When Prieto's attorney, Mr. Petit, voiced his objection, he referred only to the local rule:

> MR. PETIT: Judge, I have an objection pursuant to Rule 16.1K, and of course you are familiar with it, Judge. Mr. Rodriguez was previously listed as an expert by the county when we were dealing with no weapons policy. If you recall, Judge, that was part of the municipal 1993 action claim. He did prepare an affidavit as to that no weapons policy, but never filed any type of expert witness summary as required by 16.1K.
>
> Mr. Gressman is now calling him as a use of force expert, a totally distinct kind of situation. And in light of that, in light of the fact that he hasn't provided an expert witness summary as required by the rule, we would object to that testimony.
>
> THE COURT: Are you talking about local rules?
>
> MR. PETIT: Yes, Judge.

(R.8 at 43-44.) In the subsequent discussion of the objection, Petit again referred to the same local rule, *see id.* at 45, and never referred to any other rule.